Our last case this morning is Flatland Realty v. Secretary of the Army, 2024, 1531 and 1534. Mr. Howlett, when you're ready. Good morning, Your Honors. I am here for Flatland Realty, the appellant. May it please the Court. I understand that this will be mostly a discussion rather than just a presentation by me, most likely. But I do want to make a few very quick introductory points just to frame that discussion that I think are important so that we don't get off track. The first one, maybe the most important thing to keep in mind today, is that originally this case consisted of kind of two halves. Did the Army breach the contract? One. And two, if it did breach the contract, how much money does it need to pay in damages? I want to make sure that today we are focused on only the second part of that, the quantum of damages number, because neither I nor opposing counsel here has appealed the Board's decision about whether a breach occurred. Everybody agrees that it did. The Army breached the contract. We're just here to pick a number for damages. But if the Army breached the contract, then the other provisions don't come into play, right? That is – The contractor is freed of its obligations under the contract. That's one of my primary arguments, yes. If there's a material breach by the other party, then I no longer have to perform. It has to be a material breach. It can't just be something minor. But certainly kicking a tenant off of land, that's about as material a breach as could possibly exist in a landlord-tenant scenario. Yes, that is a core of the argument here. There's two issues here, the value of the building and the value of the business. Yes. You didn't get anything for the building. You got a reduced amount for the business, correct? Correct. If we were to agree with you on the building issue, the first issue, we would have to send it back to the Board for a determination as to the value of the building, correct? Yes, though the only evidence, not just more persuasive, literally the only evidence about how much the building is worth that was presented by either side is this one appraisal that was put forth by my client. No, I understand that, but we can't make that determination. I understand what you mean. It's the value of the building at the day, the original date of the order that you had to leave, correct?  The other thing is I saw there's a request in here in your briefing for mortgage payments. I didn't see that raised anywhere in the briefing below. At the end of your brief, I think you asked for, I'm not sure I have it correct here, the mortgage payments Flatland made from the date on which the Army took the building. I didn't see any reference to that anywhere else other than in that statement. So is that really properly before us? I am taking the case over from a pro se litigant. So at that stage, both with his initial claim and then with everything before the Board, he was pro se for all of that. Could you speak up, please? I said I am taking the case over from a litigant who before was pro se. So what is the implication of that? Is it that you don't know the answer to the question, or is it that you don't think it was raised below, unfortunately, by the pro se litigant? I don't believe it was raised below in his briefing. I mean, an argument has been made that he continues. No, because I didn't see any reference. But the only other thing is you also asked for attorney fees and costs. That has to be, we can't just ab initio grant that. That has to be the subject of an application, I believe. That will be something that we get to. Okay. Yes. The other thing I wanted to note is that the Olympia and Arizona cases that are quoted at page 18 of my opening brief give us instructions about how a contract has to be interpreted. Olympia says that the primary objective in contract interpretation is to discern what the party's intent was when they made that deal. It is apparent from the filings that were submitted by both sides at the board level that everybody thought that the argument being made was that the only reason the army was able to confiscate the building was because its termination of the lease was proper. That's not words only put in by my previously pro se client, but words that was in briefing from the army as well. So there's been, you may have noticed there was some back and forth about estoppel arguments. That's not really what I'm talking about. It's not about the issue of judicial estoppel and whether they can argue that now. It's more about the fact that they put those statements in their briefing saying effectively that their taking of the building was conditioned upon a proper termination is evidence of their understanding of the deal. What their understanding of the deal was at the board dispute level. You're saying that those statements reflect an understanding of the provisions that coincides with your understanding. Yes. And then the government argues, nonetheless, notwithstanding any statements you're talking about, the government argues here on appeal that even though there was a breach of the revocation clause, that there was an improper revocation, your client still had a duty to mitigate damages. What is your response to that? Is there a duty to mitigate damages and also why wouldn't that have an impact in this case that would cause us to affirm? So there is a duty to mitigate damages. Leaving the building there was actually the way that my client mitigated. To have removed the building, dug it up, shifted it somewhere else, paid for all of that cost, and sort of lost the value of the building that it gained by being present on the lakeshore and just sent it somewhere more inland, would have actually resulted in him having more damages than he would by doing this. But maybe more importantly than a comparison of those numbers is the fact that mitigation of damages is not just about mitigating damages. Mitigation of damages is an affirmative defense that had to be raised by the army and the army has to provide the evidence supporting that affirmative defense. So if they're trying to follow that line of argument now, it's really too late. They didn't supply any evidence at all about what my client's alternative options might have been, how much those would have cost in comparison to the value of the building. Again, remember there's no appraisal of the building at all put forth by the army. So the evidentiary burden to support that affirmative defense is on them and nothing at all was presented. I think there's one case here that maybe bears some discussion, which is the billboard case. It's called Adams. That's the one where way back when there was this billboard on this property and that tenant eventually... Is the Supreme Court Virginia case? Yes, that's right. There wasn't a breach there, right? Am I wrong? There was no breach? Correct. Yes, you are correct. There's no mention of the lease being wrongfully terminated or anything. It's just the party's relationship came to an end. The tenant left, didn't put up a fight about it at all. There's no mention of that in that case. At some point, the billboard comes to be owned by the landowner. That's really nothing like our situation here. I think the other thing that is important maybe about that one is that compare that to what my client did after learning about the termination here. He's putting up this huge fight. He's not abandoning this property in any meaningful sense of that word. Appendix 306 through 369 is a bunch of emails to the Army representatives and also a bunch of letters to Congressional representatives. Congress people with the Army copy where he's putting up a fight and saying, I'm not abandoning this thing. This belongs to me and it's wrong to kick me off. Literally the only case that the board's decision relied upon to say, hey, this property's been abandoned so it becomes something that's owned by the landowner. The only case was that billboard case, which is nothing like our situation here. That billboard owner didn't put up any fight at all. And we've got about 60 pages of fight put up by my client. That's not abandonment. I'm at five, so I'm going to reserve the rest for rebuttal unless there are other questions. And we'll save the remainder of your time if you need it for rebuttal. I'm going to place the court. Your Honor, effectively the board made findings in this case that are supported by substantial evidence in the record that Flatland acted unreasonably in the wake of this termination. Specifically, the court informed them of a desire to have the structures removed in December. They did not respond. Come May, the court sent a proposed removal plan trying to help them out. Didn't respond. The court again reached out May 15th. We're now five months and change out from the removal decision. Just sort of reaching out saying, hey, you haven't responded. Receiving an utterly intemperate response later that month indicating that basically signaling that the landowner had done nothing to remove the structures and intended to remove them on his own schedule that was reasonable as he determined it. In this context, regardless of the court's view of the contract provisions in this case, property law principles provide that if a tenant does not remove its property within a reasonable time after the termination of a lease, that property devolves to the landlord. And that's what happened here. And that's based on the factual findings that the board made. It's your view that it doesn't have to be a proper termination of a lease. It could be any termination of a lease. That's correct. If you were evicted from your apartment but left your personal property in the apartment, you can't expect that six months later the landlord would not have taken title to that and disposed of it. So you can't, I mean, I think that what's animating this case, unfortunately, is a view that if the government once breaches a lease, that's it. The government either has to buy the property or at its option, the structure owner can take as long as they want. Where is the current status of the structure? It's currently standing. The court has done some repair to it. They have told me they have no local interest in the building. They'll try for national interest. I don't know what the long-term future of the property would be. Isn't it conceded that the army breached? Yes, we have not appealed the breach determination. Therefore, the contractor was free of obligations. That's not true, Your Honor. If this court were to side, and I hear the court's skepticism of the board's interpretation of this contract and the board's reliance primarily on Article 19 of the contract. I hear the court's skepticism. Even if that's true, you still have the fundamental principles of property law and the board's factual findings that in the wake of the end of this contractual relationship, this landowner did not act reasonably and timely in trying to remove the structures. Isn't this a contract case, not a case on property law? But if you end up in the same place as a matter of law, that doesn't really matter. I mean, similarly with the mitigation of damages point, I mean, all those, all the facts that the board found, considering the sort of do-nothing posture, I have no further obligation posture, in six months since the end of the relationship, does the property owner no favors here? It's my understanding that the agreement provided that upon revocation there were provisions that required the lessor to take certain actions, including removal of the property, if agreed upon. But in a situation where the revocation, there's a breach of the contract, I'm having a hard time understanding why those provisions would still apply to the lessor. Because the provision that deals with removal deals with, simply requires revocation. And the board found that as a matter of basically dictionary definition usage, a revocation did occur here. That provision does not, as we pointed out in our open brief, Article 19 is really indifferent. If we disagree with that determination, then there's a different outcome, right? There is not a different outcome because the board, because the court would still have to determine that the board erred legally in relying on property law principles for the devolution of the title here. So if the contract evaporated, basically, if those obligations were no more, the court found that the board couldn't invoke them in the event of a breach, you still have property law principles, you still have the principle of mitigation damages, which clearly didn't occur here. And as the court pointed out, but the result would, so I think that that resolves it at this level. Can you remind me what the evidence was on mitigation? The evidence was that the property owner did nothing. What was the evidence, so I can understand, what was the evidence presented by any parties on the relative value of doing nothing versus moving the building? Anything? No. But it's also clear that a party that does nothing in the wake of a contractual breach, it's obvious you're not mitigating your damages. In all cases? I can't imagine. I mean, that's just to make a presumption that there's a per se rule. I mean, the argument I'm hearing today is that leaving the building there made more economic sense than taking it apart and putting it somewhere. Well, that was an argument. Can I continue? Sure, absolutely. All right. And so in the absence of any evidence presented on this point, I'm having a hard time understanding how there could be a determination by the board that's based on any facts, evidence, I should say. I think that the fundamental problem that the appellant is having here with that scenario is that the evidence before the board was that the appellant had done nothing. The appellant did not say below, as far as I know, during the time period that led up to the initial board decision. Now, come reconsideration time, the appellant wanted to price it out and say, yeah, it would have been more expensive to remove. But I am not aware of any evidence, and I'm happy to be corrected if I'm wrong, but I'm not aware of any evidence leading up to the board's decision, the one that's on appeal, where the appellant actually argued, let alone put forward any substantive evidence in the record to say, yeah, well, doing nothing actually was more cost-effective. All we have in the record is the evidence that the appellant did nothing. What evidence? I mean, the burdens on the government on this, right? Correct. But the government pointed out this appellant did nothing. It was then incumbent on the appellant to say, well, doing nothing actually was mitigating, because it would have been more expensive to remove. So once the government's come forward with its evidence, the appellant has some obligation. The evidence is that the fact that they did nothing. That is all that was presented to the board. But that would be all, I mean, that carries the day in the absence of the appellant responding in any meaningful way at the board in that first round. Of course, we know they sought reconsideration later and said, oh, we want to put in another evaluation. But at that point, that's the second bite at the apple, and the board appropriately determined that a second bite at the apple isn't supported under the case law, and that's consistent with this Court's precedent as well. There was references to the party being represented pro se, but for a time there was an attorney representing Flatland, wasn't there? It was. There was. I don't believe at the time of the board proceedings Oh, just in the dealings with the agency. I believe that's the case. Okay. I think her name is Erica Bash, or something along those lines, yes. But I don't think during the proceedings below. And so I guess that's the building piece, probably the most contentious piece. I didn't really hear a lot of discussion and argument today about the enterprise evaluation. It's undisputed that they operated it was a wedding venue seven months out of the year. It's undisputed that their appraiser represented to the board, when the appellant chose a paper trial to decide on the papers, appellant's expert appraiser represented that his enterprise evaluation was based on full-time operations wedding venue. In that scenario, the board can only, the board's proration of the enterprise value to a seven-twelfths, using a seven-twelfths figure, was an entirely appropriate way of jury verifying the damages based on the evidence that was presented to the board. And the appellant came back later and said that was an error, but it wasn't newly discovered evidence. It's nothing on which the board could grant reconsideration. So for all the reasons set forward in our brief and discussed at argument today, we request that the court affirm the decision. Was there evidence that the army led Flatland to believe that the deadline would not be enforced? The appellant states that in the brief, and I think without citation to record evidence. So as a result, I do not believe the court could find that on this record. If there are no further questions, I'll yield to my colleague over here. Thank you. Mr. Howlett has some time. I'm sorry? You have some rebuttal time. Thank you. What about the assertion which opposing counsel just said it's not supported by evidence that the army led Flatland to believe that the deadline would not be enforced? So I'm not pursuing the establishment of a deadline. I'm pursuing the  equitable stop argument in that sense, if that's what you're talking about, Your Honor. But that same course of events remains relevant for really exactly the reason that opposing counsel brought up, which is that if we fall back to just sort of background property law and we're thinking about if the obligations of Flatland no longer existed because of the material breach, the contractual obligations meaning, of Flatland no longer existed because of the material breach by the army, then we need to fall back to some background default law of reasonableness of these parties and their interactions with each other. And I'll just throw some dates out that I think are important on page 10 of my opening brief. I note that on April 28th, the army drafted a restoration plan itself and provided a June 20th deadline for the building to be removed. So it's April 28th when they give that plan. And the army says that if Flatland wants to modify any terms of that plan, Flatland has to let them know. Flatland on May 16th provides what opposing counsel has characterized as a utterly intemperate response, which I'll just read to the court here. Flatland sent that response by email saying, I have your draft plan. I will follow it to the best of my ability. I will not sign it. I will not send it back to you. The project will not be completed by June 20th as that's completely unreasonable. It will be completed on a reasonable schedule starting this summer, and if you are willing to propose an equitable schedule I would be happy to discuss. So there's two things I want to note about that. First is that email comes about 17, 18 days after the army says you've got to get out, here's your deadline, and here's our plan that we want you to follow. It's really not an unreasonable amount of time to think about what would I really need to accomplish to move this amount of earth, dig up this building, shift it somewhere else. And not only that, it's not only about removal of the building, it's also about restoration of the property back to the state that it would be in if the building wasn't there. Section 12 of the lease talks about that. So if the army is still claiming that all of those obligations still existed, which I don't think is the case, it's not just about digging up the building, it's also about putting all the dirt back in that hole and maybe planting over it or whatever. So reasonableness here, I think a response two and a half weeks later is entirely reasonable and it's not even a flat refusal. It's not saying now we're not going to do anything at all, it's saying we'll follow it to the best of our ability, please work with us on a more reasonable timeline where we can actually accomplish this thing. The second thing I wanted to bring out was this bit about how many months the business was supposed to be operated as a wedding venue. The background here is that during the off season, when nobody's really at the lake, the plan is to operate it as a wedding venue. When people are at the lake, operate it with kayak rentals and that sort of thing. So five months of kayak rental, et cetera, and seven months of wedding space and event space rentals. The Army has provided us with a definition of what substantial evidence means from a case which says it's such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Meaning when the administrative law judges on the board are taking a look at that appraisal and interpreting it I could see how if you were looking at that only, that appraisal in isolation, how you might think that it's saying that the business is being run as exclusively a wedding venue for a full 12 months. But the board was never looking at that appraisal in isolation in a vacuum. It's looking at it as one piece of a larger litigation and every time either party had ever talked about this arrangement in any of its briefing, it had always been agreed by both parties and was actually characterized rightly as an uncontested fact by the Army that it was to be five months of other activities and seven months of wedding venue. So for the administrative law judge to assume without checking, without asking for additional information as the rules provide, to assume that this litigant submitted a valuation that contradicted everything he had ever said in any brief he had ever submitted really was unreasonable. And at the very least, clarification, a one sentence email should have been sought and it wasn't. And for that reason we think that the quantum should be increased to the full amount stated. Thank you to both counsel. The case is submitted.